UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
RONALD S. ROBINSON,

         Plaintiff,

   - against -

SUFFOLK COUNTY POLICE DEPARTMENT,
POLICE OFFICER JOHN VALENTE # 5939/510/01,
POLICE OFFICER BRIAN RATHBURN #35302/510/01,
DETECTIVE MILTON GONZALEZ #861/3150, both in
their official capacities as police officers and detective
and in their personal capacities,

         Defendants.
-------------------------------------------------------------------X

**ORDER**

CV 08-1874 (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

  Presently before the Court is Defendants' objections to Plaintiff's purported expert report dated August 19, 2011. *See* DE 98. The report at issue was drafted by Plaintiff's treating physician, Dr. Brian Durkin, who is the current Director of the Center for Pain Management within the Department of Anesthesiology at the Stony Brook University Medical Center. Defendants argue that the most recent submission "is wholly inadequate and does nothing to cure the defects of the prior attempts" by Dr. Durkin. As such, Defendants object to the purported report and any attempt of Plaintiff to offer testimony designated to reach the conclusions contained in the report.

**I.  BACKGROUND**

  As reflected in the docket of this action, the Court has given the *pro se* Plaintiff multiple opportunities to serve an expert report that complies with Rule 26 of the Federal Rules of Civil Procedure. During the April 6, 2011 Status Conference, Plaintiff notified the Court of his

intention to introduce an expert witness in the case, namely, his treating physician, Dr. Durkin. *See* DE 84, ¶ 3. At a subsequent Pre-Trial Conference held on June 27, 2011, Plaintiff advised the Court that he served Defendants' counsel with an expert report prior to the April 26, 2011 deadline. Defendants' counsel argued, however, that the report, consisting of a one-page letter, did not comply with Rule 26. After reviewing the purported expert report, the Court agreed with Defendants' counsel and found that Dr. Durkin's report did not satisfy the requirements of Rule 26. *See* DE 93, ¶ 2. After providing Plaintiff with a copy of Rule 26(a)(2)(B), which lists the information that must be addressed in the expert report, the Court went on to state the following:

> In this case, it is clear from the Plaintiff's statements that he intends to have his treating physician testify in an expert capacity. That is perfectly acceptable, so long as the expert complies with the requirements of Rule 26. Here, the Court is advised by the Plaintiff that his physician will be testifying as to causation as it relates to the underlying incident. Specifically, the doctor presumably will be offering an opinion, "with a reasonable degree of medical certainty" (the standard for expert testimony), that the neck injury sustained by the plaintiff was directly caused by the incident underlying this lawsuit. In order to do so, the doctor must file a complete expert report, setting forth all the required information and documentation provided for in Rule 26, including what he relied upon in forming his opinion (e.g., medical records, prior experience, medical treatises, the physician's own publications, etc.). The report should be divided by (and address) the six categories of information stated in Rule 26. Plaintiff is urged to give a copy of this Order to the physician to assist him in this process.

*Id.* At this same Conference, the Court gave Plaintiff one final opportunity to serve Defendants' counsel with an expert report that satisfies the requirements of Rule 26. An August 5, 2011 deadline was given for such service to be made and another conference was scheduled for August 22, 2011.

Subsequent to the June 27, 2011 Conference, Plaintiff submitted to the Court and Defendants' counsel another single-page letter from Dr. Durkin dated July 18, 2011. On August 15, 2011, Defendants' counsel objected to this purported expert report since it failed to comply with Rule 26 on its face and was, according to Defendants, completely speculative. *See* DE 95. At the August 22, 2011 Conference, Plaintiff provided Defendants' counsel and the Court with additional documents from Dr. Durkin. These documents included: (1) an August 3, 2011 letter from Dr. Durkin setting forth his deposition fee; (2) an August 19, 2011 letter which appears to be Dr. Durkin's most recent purported expert report; and (3) Dr. Durkin's *curriculum vitae*. *See* DE 96, ¶ 1. In light of this new information, the Court granted Defendants' counsel ten (10) days to review the materials and submit any opposition to the Court. On August 31, 2011, Defendants' counsel submitted his objections which is the basis for the instant dispute.

## II.  DISCUSSION

The Court explicitly instructed Plaintiff during the June 27, 2011 Conference that he had one final opportunity to cure the deficiencies contained in the previously submitted expert reports. The purported August 19, 2011 "expert report" and the other submissions from Dr. Durkin not only fail to rectify all the deficiencies contained in the previously submitted expert reports but they also bring to light other serious concerns regarding Dr. Durkin's anticipated expert testimony. Rule 26 explicitly states that an expert report must contain the following:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a

3

>statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). Courts may strike expert reports that are incomplete and insufficiently detailed to satisfy Rule 26(a)(2). *See Conte v. Newsday, Inc.*, No. CV 06-4859, 2011 WL 2671216, at *4 (E.D.N.Y. July 7, 2011) ("An expert report that lacks detailed discussion and fails to include any of the underlying conclusions on which the experts' ultimate opinions are based violates Rule 26(a)(2)(B) and may be excluded pursuant to Rule 37.") (internal quotations omitted); *Smolowitz v. Sherwin-Williams Co.*, No. 02-CV-5940, 2008 WL 4862981, at *3 (E.D.N.Y. Nov 10, 2008) ("A party that fails to satisfy the Rule 26 disclosure requirements without justification is precluded from offering expert witnesses at trial.")

Putting aside the fact that the most recent proposed expert report satisfies only some of the Rule 26 requirements when it is considered in conjunction with Dr. Durkin's other submissions,[1] other Rule 26 requirements are either missing or inadequately addressed. For instance, the purported expert report (or the other submissions from Dr. Durkin) fails to identify or attach any exhibits that will be used by Dr. Durkin to support the opinions rendered in his report. In addition, while the purported report contains Dr. Durkin's ultimate opinion that Plaintiff "was the recipient of some type of violence that likely led to the disc bulge at C3-C4," the report does not explain the basis and reasoning behind this opinion. In fact, all Dr. Durkin states in the report is that prior cervical spine scans revealed an essentially normal C3-C4 level and that a subsequent cervical spine scan was done on March 9, 2007. While the Court presumes that it is Dr. Durkin's belief that this March 9, 2007 spine scan evidences a disc bulge that was

---

[1] For example, Dr. Durkin provides an August 3, 2011 letter stating his hourly and per day fee.

not present in previous spine scans, the report inadequately explains Plaintiff's injury and the cause of the same. Likewise, Dr. Durkin does not provide *any* basis or reasoning supporting his opinion that Plaintiff "has more chronic pain now." Therefore, in this Court's view, Dr. Durkin's report does not satisfy the requirements of Rule 26(a)(2)(B) and should be excluded. *See Smolowitz*, 2008 WL 4862981, at *3 (finding plaintiff's purported expert report which failed to explain the basis for the opinions rendered inadequate).

Separate from the issue of whether Dr. Durkin's report was in compliance with Rule 26 is the admissibility of the "expert" testimony which Dr. Durkin seeks to offer in this case. *See Conte*, 2011 WL 2671216, at *4 ("Whereas Rule 26(a) guards against the presentation of sketchy and vague expert reports that provide little guidance to the opposing party as to an expert's testimony, Rule 702 guards against the presentation of insufficiently reliable evidence to the finder of fact."). Federal Rule of Evidence 702, which governs the admissibility of expert testimony, provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; *see also Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005) ("Rule 702 governs the district court's responsibility to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.") (internal quotations omitted). As a starting point, the Court concludes that Dr. Durkin's expert testimony is not based upon sufficient facts

or data. Dr. Durkin opines that "Mr. Robinson was the recipient of some type of violence that likely led to the disc bulge at C3-C4." This opinion appears to be based from his review of "cervical spine scans from 2005 and 2006;" the "report of the physician who cared for Mr. Robinson;" and a March 9, 2007 cervical spine scan. However, there is no delineation as to what specifically from the limited records identified here led to this opinion. Also, there is no indication from Dr. Durkin that any of the pleadings or deposition transcripts from this suit were reviewed and considered in forming his opinion.

It is also clear to the Court that Dr. Durkin's anticipated "expert" testimony would be unreliable since "reliability within the meaning of Rule 702 requires a sufficiently rigorous analytical connection between [the] methodology and the expert's conclusions." *Nimely*, 414 F.3d at 396. Here, Dr. Durkin's opinion that *some* type of violence *likely* led to the disc bulge evidences the lack of reliability of his expected testimony. It is this Court's view that such assertion without further explanation or support falls far short of the "reasonable degree of medical certainty" standard required for an expert's testimony. In addition, there is no amplification of the reasoning or methodology by which Dr. Durkin reaches his conclusion that *some* violence led to Plaintiff's alleged injury. Considering the testimony itself, coupled with the lack of reasoning and methodology behind such testimony, this Court is left to conclude that "there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997); *see also Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) ("When an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion

testimony." ).

Furthermore, expert testimony which "usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it" does not, by definition, assist the jury. *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). Dr. Durkin's opinion that Plaintiff "has more chronic pain now than he would if he was never attacked by the Suffolk County Police while in custody" does just that. While the Court appreciates the fact that Plaintiff is appearing *pro se*, he "must still comport with the procedural and substantive rules of law." *Javino v. Town of Brookhaven*, No. 06-CV-1245, 2008 WL 656672, at *3 (E.D.N.Y. Mar. 4, 2008). This includes putting forth admissible expert testimony if a plaintiff intends to present an expert. *See Viscusi v. Proctor & Gamble*, No. 05-CV-1528, 2007 WL 2071546, at *8 (E.D.N.Y. July 16, 2007) (precluding *pro se* plaintiff's expert and expert report). As such, Plaintiff is hereby precluded from utilizing Dr. Durkin as an expert. The one-page "expert report" is also precluded.

Notwithstanding this holding, however, Dr. Durkin is still permitted to testify in this action. Dr. Durkin states that he has been Plaintiff's treating physician for the past two years. A treating physician need not serve an expert report in order to testify. *See, e.g.*, *Reilly v. Revlon, Inc.*, No. 08 Civ. 205, 2009 WL 2900252, at *3 (S.D.N.Y. Sept. 9, 2009) ("Treating physicians do not need to be designated as experts in order to testify."); *Monroe-Trice v. Unum Emp. Short-Term Disability Plan*, No. 00 Civ. 6238, 2003 WL 68033, at *1 (S.D.N.Y. Jan. 8, 2003) ("Rule 26(a)(2)(B) does not require a treating physician to provide a report as a predicate to testifying for his patient."). However, without properly declaring a treating physician as an expert witness, the physician's testimony is limited to certain parameters, including his/her care and treatment of

the patient. *See Turner v. Delta Air Lines*, No. 06-CV-1010, 2008 WL 222559, at *1 (E.D.N.Y. Jan. 25, 2008) ("[I]f the witness testifies only to the opinions formed in providing plaintiff medical care, such opinions are considered an explanation of treatment [ ] and the physician may properly be characterized as a fact witness."); *Monroe-Trice*, 2003 WL 68033, at *2 ("The doctor will, however, be permitted to testify about his evaluation and treatment of plaintiff, and may express his opinions about the plaintiff's condition and prognosis based upon his observations while treating plaintiff." ); *Lamere v. New York State Office for the Aging*, 223 F.R.D. 85, 89 (N.D.N.Y. 2004) ("It is indeed certain that a treating physician, who has not complied with the reporting requirements of Rule 26(a)(2)(B), should not be permitted to render opinions outside the course of treatment and beyond the reasonable reading of the medical records."); *Peck v. Hudson City Sch. Dist.*, 100 F. Supp. 2d 118, 121 (N.D.N.Y. 2000) ("[T]o the extent that a treating physician testifies only to the care and treatment of the patient, the physician is not considered to be a 'specially employed' expert and is not subject to the written report requirements of Rule 26(a)(2)(B).").

Therefore, the key to what a treating physician can testify to without being declared an expert is based on *his* personal knowledge from consultation, examination and treatment of the Plaintiff, "not from information acquired from outside sources." *Mangla v. Univ. of Rochester*, 168 F.R.D. 137, 139 (W.D.N.Y. 1996); *see also Smolowitz*, 2008 WL 4862981, at *4 (stating that a treating physician's testimony "must be based on information that *he* has acquired in his role as a treating physician.") (emphasis added); *Salas v. United States*, 165 F.R.D. 31, 33 (W.D.N.Y. 1995) ("The relevant question is whether these treating physicians acquired their opinions . . . directly through their treatment of the plaintiff."). Courts in this Circuit have

commented that a treating physician cannot be limited to solely factual testimony. *Lamere*, 223 F.R.D. at 87; *Byrne v. Gracious Living Indus., Inc.*, No. 01 Civ. 10153, 2003 WL 446474, at *2 (S.D.N.Y. Feb. 25, 2003) ("A treating physician who is called to testify to information acquired solely in that role, as opposed to giving an opinion formulated for trial, is not an expert for purposes of Rule 26(a)(2)(A)" and that physician may render expert opinion testimony regarding causation even without submitting a detailed report). As the court noted in *Lamare*,

> It is a given that there are facts to which a treating physician would testify to in order to explain the treatment, diagnosis, and prognosis provided to the patient. Those facts would be the patient's on-going medical history, the course of treatment, medication and other prescriptions, and any other relevant facts germane to the course of treatment. But we cannot completely limit a treating physician to solely factual testimony. A treating physician is no less a person with specialized knowledge and, in the scheme of her physician duties, provides opinions of various nature in the process of treating to her patient. In this respect, we view the doctor's testimony as far broader than just a mere fact witness but as an expert in that the doctor's [ ] scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue [.] [A] witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Lamere*, 223 F.R.D. at 87-88 (quoting Fed. R. Evid. 702). The court in *Lamere* concluded that physicians are expert witnesses where testimony is governed by Rule 702 rather than 701, even though they do not fall within the confines of experts under Rule 26. *See Reilly*, 2009 WL 2900252, at *3 (concluding that treating physicians may give opinion testimony about Plaintiff's condition and emotional damages pursuant to Fed. R. Evid. 702).

9

If Dr. Durkin is to provide testimony in his own right with regard to causation, his testimony must nonetheless be limited to and based upon the information that he has acquired in his role as a treating physician. *Smolowitz*, 2008 WL 4862981, at *4. As one court has noted, "[a] doctor's opinions on the issue of causation are relevant, indeed, necessary, to the treatment of the patient and therefore constitute an explanation of treatment." *Turner*, 2008 WL 222559, at *2. Accordingly, Dr. Durkin may testify as a treating physician and will be permitted to offer opinion testimony on diagnosis, treatment, prognosis and causation, but solely as to the information he has acquired through observation of the Plaintiff in his role as a treating physician limited to the facts in Plaintiff's course of treatment.

### III.  CONCLUSION

In light of the foregoing findings, Plaintiff is precluded from introducing Dr. Durkin as an expert witness under Rule 26 at trial. The purported "expert report" is also precluded. However, Dr. Durkin may testify at trial in his capacity as Plaintiff's treating physician in accordance with this Order. At the time of trial, Dr. Durkin will be given an instruction from the Court, outside the presence of the jury, regarding the parameters of his testimony. The pro se Plaintiff is free to share this Order with Dr. Durkin in the interim. If Defendants' counsel intends to take the deposition of Dr. Durkin as Plaintiff's treating physician, he must do so prior to the November 14, 2011 trial date.

Since the issues surrounding Dr. Durkin's testimony are now resolved, the Court finds that a conference to address this matter (*see* DE 99, 101) is moot and no longer necessary. However, the Court is scheduling a trial preparation conference for October 26, 2011 at noon.

Both sides are required to attend in person.

Defendants' counsel is directed to serve a copy of this Order upon the Plaintiff pro se forthwith and to file proof of service on ECF.

**SO ORDERED.**

Dated: Central Islip, New York
October 17, 2011

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge